# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## ALEXANDRIA DIVISION

| | |
|---|---|
| SHAFIQULLAH SAHIL | CASE NO.  1:26-CV-478 SEC P |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| WARDEN, ET AL. | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the court is a petition for writ of habeas corpus filed pro se by Shafiqullah Sahil, ("Petitioner'), pursuant to 28 U.S.C. § 2241.  Petitioner is an immigration detainee at the Winn Correctional Center in Winnfield, Louisiana.  Petitioner seeks to be immediately deported to Afghanistan or to be released from detention.

Petitioner is a native and citizen of Afghanistan.  On December 17, 2024, he entered the United States and was taken into immigration custody.  On July 30, 2025, Petitioner was ordered removed to Afghanistan.  He reserved his right to appeal.  Petitioner untimely filed his appeal on October 6, 2025 and his appeal was summarily dismissed on November 3, 2025 because it was untimely.  Petitioner claims he has cooperated with ICE to be removed from the United States.  He claims ICE has his Afghan passport which expires on

October 29, 2028 and all of his identification documents.  He further claims that he is willing to pay for all travel expenses (Docs. 1 and 8).

Petitioner states that on October 3, 2025, he signed his custody case review. Petitioner states that on October 5, 2025, ICE informed him that it had sent an Afghanistan Transportation Letter to Qatar to be delivered to Afghanistan, and it was waiting for documents to be returned.  He states that on October 18, 2025, ICE informed him that his case was with the Travel Unit, and it was working to set up his deportation arrangements. He states that on November 14, 2025, ICE informed him that it was waiting on his Embassy.  On November 22, 2025, ICE informed Petitioner it was waiting for an Afghan transport letter.  On December 8, 2025, ICE informed Petitioner it was still in the process of scheduling his removal.  Petitioner states that on December 10, 2025, ICE informed him that it was waiting on a response from his Consulate regarding his travel documents. Petitioner claims that on December 25, 2025, he signed for voluntary deportation.  On March 3, 2026, ICE informed Petitioner that it had been in contact with his consulate and was currently waiting on a transportation letter and he would be removed as soon as it was possible. On March 17, 2026, ICE informed Petitioner it was working to facilitate his flight as quickly as possible (Docs. 1 and 8).

On April 20, 2026, Respondents filed a Response in Opposition to Petition for Writ of Habeas Corpus and provided the Declaration of Acting Assistant Field Office Director Justin Williams.  Respondents claim that Petitioner's order of removal became administratively final on November 3, 2025.  Respondents detail the efforts made to deport Petitioner to Afghanistan.  On September 12, 2025, Enforcement and Removal Operations

(ERO) sent an Afghanistan Transportation Letter to the United States Embassy in Doha, Qatar for delivery to the Afghanistan Embassy.  On December 2, 2025, Petitioner was served with a Decision to Continue Detention because Petitioner did not demonstrate that he would not pose a significant flight risk pending his removal from the United States. After Petitioner was interviewed by ERO on February 18, 2026, it was determined that he would remain in ERO custody pending his removal to Afghanistan.  Respondents claim that the ERO is actively working with the United States Embassy in Doha, Qatar which is working with the Afghanistan Embassy to facilitate Petitioner's removal to Afghanistan by securing the required travel documents.  Respondents claim that once travel documents are obtained, Petitioner's removal will be scheduled (Doc. 9).

Respondents argue that Petitioner is likely to be removed in the reasonably foreseeable future and that he has not demonstrated that if released he will not pose a flight risk.  Respondents claim that consistent, reasonable efforts are being made to obtain travel documents for Petitioner for removal.  They also claim they have been proactive in effectuating his removal.

On May 8, 2026, Attorney Andres Gomez of the Federal Public Defender Office enrolled as counsel for Petitioner and filed a Reply to Respondents' Response (Docs. 13, 14, and 16).  Petitioner claims he has met his burden to show that removal is not reasonably foreseeable.  He argues that his order of removal was issued more than six months ago, and he has received no indication that his removal is reasonably foreseeable.  He argues that Respondents have made no concrete efforts to deport him since September 12, 2025 other than a conclusory and vague statement that additional efforts are being undertaken.

Petitioner argues that Respondents have presented no evidence that he has any kind of substantive criminal history.  Petitioner further argues that consideration of his criminal history is not relevant or applicable pursuant to Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) (Doc. 16).

On May 11, 2026, Petitioner filed a pro se reply to the Respondents' response dated May 1, 2026 (Doc. 17).  Petitioner argues that Afghanistan is under the control of the terrorist group the Taliban and is at odds with the American government.  He claims Afghanistan refuses to accept deportees.  He also claims that the American government's attempts to facilitate removal through the third party Qatar have been fruitless.  He claims he has no criminal record and no ties to the Taliban.  He argues that he is not a threat to the community, he has a sponsor, and he is not a flight risk.  Petitioner also argues that he does not need travel documents because he has a valid passport which he turned over to ICE. Petitioner states that on March 31, 2026, ICE informed him that his case was being reviewed and processed as quick as possible.  He states that on March 12, 2026, ICE informed him that his case was pending and there was no update at that time (Doc. 17).

Because Petitioner establishes there is no significant likelihood of his removal in the reasonably foreseeable future, the petition should be GRANTED.

## LAW AND ANALYSIS

After an alien is ordered removed, the Government has 90 days within which to effectuate the removal.  See 8 U.S.C. § 1231(a)(1)(A).  However, Section 1231 permits detention beyond 90 days for a period reasonably necessary to bring about that alien's removal from the United States and detention for up to six months is "presumptively

reasonable." See Zadvydas v. Davis, 533 U.S. 678, 701 (2001). Afterward, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must either rebut that showing or release him. Id.; see also 8 CFR § 241.13 (setting forth the Zadvydas procedures). Petitioner bears the initial burden of demonstrating that a likelihood of removal in the reasonably foreseeable future does not exist. See Andrade v. Gonzales, 459 F.3d 538 (5th Cir. 2006). The alien's claim must be supported by more than mere "speculation and conjecture." Idowu v. Ridge, 03-CV-1293, 2003 WL 21805198, *4 (N.D. Tex. Aug. 4, 2003) (citing Fahim v. Ashcroft, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)).

Petitioner's removal order became final at the latest on November 3, 2025. Petitioner has been detained beyond the presumptively reasonable period, and the presumption of reasonableness no longer applies. See Shengelia v. Ortega, 5:25-CV-1545, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025); see also Altayb v. U.S. Immigration & Customs Enf't, 1:25-CV-01615, 2026 WL 550093, at *1 (W.D. La. Feb. 9, 2026), adopted by, 2026 WL 544292 (W.D. La. Feb. 26, 2026).

Petitioner has satisfied his initial burden of demonstrating that a significant likelihood of removal in the reasonably foreseeable future does not exist. He has been detained for more than six months since his removal order became final on November 3, 2025. Petitioner asserts that the conflict in Afghanistan and the Taliban rule make his removal highly unlikely. Petitioner has now been detained for more than 17 months, including six months after his removal order became final. "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the

'reasonably foreseeable future' conversely would have to shrink." Zadvydas, 533 U.S. at 701.

The burden therefore shifts to the Government to come forward with evidence of a significant likelihood that Petitioner will be deported in the reasonably foreseeable future. The Government presents a sworn declaration of Acting Assistant Field Office Director Justin Williams, which confirms that on September 12, 2025, an Afghanistan Transportation Letter was sent to the United States Embassy in Qatar for delivery to the Afghanistan Embassy. The declaration states that the ERO is actively working with the U.S. Embassy in Qatar who is working in coordination with the Afghan Embassy to facilitate Petitioner's removal to Afghanistan by securing the required travel documents. There is no evidence of any likelihood of removal in the reasonably foreseeable future, much less a significant one. The Government is no closer to removing Petitioner now than it was in September 2025. "A remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." Nguyen v. Noem, 5:25-CV-176, 2026 WL 237282, at *9 (S.D. Tex. Jan. 28, 2026) (citing Balouch v. Bondi, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025) (citation omitted)).

Petitioner is not required to "show the absence of any prospect of removal—no matter how unlikely or unforeseeable," only that he has "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701-02. It follows that the likelihood of Petitioner being removed in the reasonably foreseeable future is certainly not significant. The Government has failed to meet its burden to refute that assertion.

Moreover, the Government's argument that Petitioner's continued detention is justified because he has not demonstrated that, if released, he will not pose a flight risk is weak. Notably, the Supreme Court found that among the two factors considered by the Government in determining custody and release (flight risk and danger to the community), "the first justification—preventing flight—is weak or nonexistent where removal seems a remote possibility at best." Zadvydas v. Davis, 533 U.S. at 690, 121 S.Ct. 2491. However, generally, "dangerousness" and "flight risk" are not part of the Zadvydas analysis. Id. at 690-92, 121 S. Ct. 2491 (explaining that the Court has "upheld preventive detention based on dangerousness only when limited to especially dangerous individuals and subject to strong procedural protections.").

Accordingly, the court concludes that habeas relief is proper and Zadvydas requires Petitioner's release from his unlawful detention.

Accordingly, **IT IS RECOMMENDED** that the petition be **GRANTED** and Petitioner be released under appropriate conditions.

## OBJECTIONS

Under the provisions of 28 U.S.C. 636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. Proc. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, at Shreveport, Louisiana, on this the 3rd day of June 2026.

_____
Mark L. Hornsby
U.S. Magistrate Judge